# United States District Court
# Central District of California

| | |
|---|---|
| MAKA HOSPICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALEX M. AZAR II, SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Defendant. | Case No: 2:19-cv-07065-DDP (AFMx) <br><br> **ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [6]; AND ORDER TO SHOW CAUSE RE: SUBJECT MATTER JURISDICTION** |

## I. INTRODUCTION

Plaintiff Maka Hospice, Inc. ("Maka Hospice") filed its Complaint on August 13, 2019, against Defendant Alex M. Azar II, Secretary of Health and Human Services, for various claims resulting from Defendant's suspension of Maka Hospice's Medicare payments. (Compl. ¶ 9, ECF No. 1.) On August 14, 2019, Maka Hospice brought an Ex Parte Application for Temporary Restraining Order Compelling Payment of Funds Withheld by Defendant ("Application"). (Appl. 1, ECF No. 6.)

For the following reasons, the Court **DENIES** the Application.[1]

---

[1] After carefully considering the papers filed in support of the application, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Maka Hospice is a licensed and qualified hospice facility providing services to patients diagnosed as terminally ill. (Compl. ¶ 6.) On November 14, 2018, Defendant's agent, Qlarant Integrity Solutions, LLC ("Qlarant"), conducted a surprise audit of Maka Hospice's facilities. (Compl. ¶ 9.) Following this audit, "Qlarant concluded that there were 'credible allegations of fraud' and . . . imposed a unilateral suspension of Medicare payments due to [Maka Hospice]." (Compl. ¶ 9.)

On May 9, 2019, the Centers for Medicare and Medicaid Services ("CMS") sent Maka Hospice a letter indicating that it was suspending Maka Hospice's Medicare payments without prior notice because "giving prior notice would place additional Medicare funds at risk and hinder [its] ability to recover any determined overpayment." (Compl. Ex. 1, at 1.) On May 22, 2019, Maka Hospice through its attorney, sent a rebuttal letter challenging the suspension of Medicare payments. (*See* Compl. Ex. 2.)

Maka Hospice alleged that Defendant has delayed resolution of the case; thus, necessitating this action and Application. (*See* Appl. 4.) Maka Hospice further alleged that the delays have and will continue to cause it immediate and irreparable harm such as the imminent closure of its business, which would result in serious health risks to its patients. (Appl. 4.)

Accordingly, Maka Hospice, through this Ex Parte Application, seeks "to compel Medicare to continue making payment for past and future services for the treatment of patients." (Appl. 4.)

## III. SUBJECT MATTER JURISDICTION

Before the Court addresses the Application, the Court reviews whether it has subject matter jurisdiction over this case. Maka Hospice alleges that this Court has subject matter jurisdiction pursuant to 42 C.F.R. §§ 405.980 and 405.1132. However, Maka Hospice's allegations are insufficient.

CMS can suspend payments to a Medicare provider "in whole or in part," when it determines "a credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2). When CMS suspends a provider's payments, it must provide the provider an opportunity to submit a rebuttal statement as to why CMS should end the suspension. 42 C.F.R. §§ 405.373(a)(2), 405.374. This determination is not appealable and "is not an initial determination" within the Medicare Act's administrative process. 42 C.F.R. § 405.375(c); *cf.* 42 C.F.R. § 405.924 (listing actions considered initial determinations).

After suspending payments, CMS must reevaluate every 180 days whether good cause exists to continue the suspension. 42 C.F.R § 405.371(b)(2)(i). CMS must end the suspension after 18 months, unless the case has been referred to, or is being considered by, the Office of Inspector General for administrative action or the Department of Justice requests that the suspension continue. 42 C.F.R. § 405.371(b)(3). During the suspension period, CMS processes all claims received and determines whether the services provided were proper or if overpayment occurred. *See generally* 42 C.F.R. 405.372(e). If at the end of the investigation, CMS finds that overpayment to the provider occurred, CMS will use the suspended payments to reduce or eliminate any overpayment, and it will then pay the excess amount to the provider. *Id.* CMS's determination of whether an overpayment occurred triggers a multi-step administrative appeals process for a provider to follow if it is dissatisfied with the initial overpayment determination. 42 C.F.R. § 405.904(a)(2). The administrative appeal steps are: (1) a determination of the initial overpayment decision (42 C.F.R. § 405.940 *et seq.*); (2) a reconsideration by a qualified independent contractor ("QIC") (42 C.F.R. § 405.960 *et seq.*); (3) a *de novo* review and hearing before an Administrative Law Judge ("ALJ") (42 C.F.R. § 405.1002(b)); and (4) a review and decision by the Medicare Appeals Council ("Council") (42 C.F.R. § 405.1102(a)). A provider may seek review in a federal

district court only after receiving a decision from the Council. 42 C.F.R. § 405.1136; *see also* 42 C.F.R. § 405.1130.

Federal courts are vested with jurisdiction over only a final decision of the Department of Health and Human Services. 42 U.S.C. § 405(g), (h); *see also* 42 U.S.C. § 1395ff(b)(1)(a) (making § 405(g) applicable to Medicare); *Hironymous v. Bowen*, 800 F.2d 888, 894 (9th Cir. 1986) ("The finality condition has been held to include a nonwaivable requirement of presentation of the claim and a waivable requirement of exhaustion of administrative remedies."). Accordingly, Maka Hospice must exhaust its administrative remedies prior to seeking judicial review. *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003).

Maka Hospice has not alleged that it exhausted its administrative remedies prior to bringing this action. Maka Hospice has only alleged that it submitted a rebuttal letter, which is far removed from a final decision. As such, this Court **ORDERS** Maka Hospice to **SHOW CAUSE**, in writing only, on or before **August 26, 2019**, why this case should not be dismissed for lack of subject matter jurisdiction.

### IV. NOTICE

Even assuming that the Court has subject matter jurisdiction, Maka Hospice failed to comply with the rules necessary for the issuance of a temporary restraining order.

Federal Rule of Civil Procedure 65(b)(1) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if" specific facts in an affidavit or verified complaint show immediate and irreparable harm *and* "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

Defendant has not appeared in this action, and it is unknown whether Defendant received notice of this Application. Maka Hospice did not submit any declaration identifying its efforts to give notice and reasons why notice should not be required

pursuant to Federal Rule of Civil Procedure 65(b)(1)(B).  For this reason alone, the Court must deny Maka Hospice's Application.

## V. THE *WINTER* FACTORS

Regardless of the notice issue, Maka Hospice's Application does not provide adequate support for this Court to issue a temporary restraining order.

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952).  The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The issuance of a temporary restraining order may not exceed 14 days "unless before that time the court, for good cause, extends it for a like period." Fed. R. Civ. Proc. 65(b)(2).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).  "The court may issue a

preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Injunctions are classified as either prohibitory or mandatory. *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). A prohibitory injunction restrains a party from further action; whereas a mandatory injunction orders a party to take certain action. *Id.* Although mandatory and prohibitory injunctions are governed by the same standard, "mandatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (internal quotation marks omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks omitted).

Here, Maka Hospice seeks a mandatory injunction "to compel Medicare to continue making payments for past and future services for the treatment of patients." (Appl. 4.) The Court does not specifically address each of the *Winter* factors because Maka Hospice has not made a showing that it is entitled to a mandatory injunction. Maka Hospice fails to address this issue entirely. Moreover, even if the Court were to issue an injunction, Maka Hospice also fails to address the security requirement. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

Accordingly, Maka Hospice's Application is denied due to the myriad of shortcomings as identified above.

## VI. CONCLUSION

Although the Court is sympathetic to the potential harm to Maka Hospice's patients, Maka Hospice has not made an adequate showing that (1) this Court has subject matter jurisdiction; (2) notice was properly given to Defendant or that a temporary restraining order should issue without notice; (3) it is entitled to a mandatory injunction; and (4) what, if any, security it will provide if an injunction is issued.

For the reasons set forth above, the Court **DENIES** Maka Hospice's Ex Parte Application for Temporary Restraining Order (ECF No. 6). Additionally, Maka Hospice is **ORDERED** to **SHOW CAUSE**, in writing only, on or before **August 26, 2019**, why this case should not be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

August 19, 2019

_____
**Otis D. Wright, II for
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE**